Bradley Scott Buller, Pro Se
Carrie Buller, Pro Se
1593 Schmitz Rd
Carlton, MN 55718
(907) 223-2611
bradley.buller@icloud.com

**RECEIVED**

MAY 06 2026

CLERK, U.S. DISTRICT COURT
DULUTH, MINNESOTA

## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| **BRADLEY SCOTT BULLER**, AN INDIVIDUAL MINNESOTA HOMEOWNER AND LONG-TIME OWNER-OCCUPANT OF THE SINGLE-FAMILY HOMESTEAD AT 1593 SCHMITZ RD., CARLTON, MINNESOTA (PARCEL IDS 81-030-1794 AND 81-030-1820), BORROWER ON THE OCTOBER 31, 2005 MORTGAGE LATER MODIFIED IN 2019 AND IDENTIFIED BY LOAN NO. 0019028752; SEEKS DECLARATORY, INJUNCTIVE, AND MONETARY RELIEF FOR SERVICING, FORECLOSURE, AND DEBT-COLLECTION VIOLATIONS AND TO PROTECT STATUTORY REINSTATEMENT, REDEMPTION, AND POSSESSION RIGHTS; <br><br> **CARRIE BULLER**, AN INDIVIDUAL MINNESOTA HOMEOWNER AND OWNER-OCCUPANT, CO-OWNER AND CO-MORTGAGOR ON THE OCTOBER 31, 2005 MORTGAGE SECURING THE SUBJECT HOMESTEAD; JOINS FOR DECLARATORY AND INJUNCTIVE RELIEF CONCERNING TITLE, REINSTATEMENT, REDEMPTION, AND POSSESSION RELATED TO THE NONJUDICIAL FORECLOSURE BY ADVERTISEMENT, <br><br> Plaintiffs, | Case No.: **0:26-cv-01150-PJS-LIB** <br><br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS** |

SCANNED

MAY 06 2026

U.S. DISTRICT COURT DULUTH

*Obduskey*, 586 U.S. at 477–78 (emphasis added). That limiting language is critical. The Court repeatedly framed its holding in terms of entities engaged in **no more than** the kind of security-interest enforcement presented there. Id. at 477–78.

That means the present motion cannot be resolved merely by invoking the words "foreclosure by advertisement" or "nonjudicial foreclosure." The relevant question is whether the FAC plausibly alleges that LWDB and Barbee did **more than** carry out the antecedent, ministerial steps required by Minnesota foreclosure law. If the FAC alleges that they engaged in communications whose purpose was to induce payment of money, declared the debt accelerated, presented a "Total Loan Balance," invoked debt-collector status, and applied additional payment pressure during the validation period, then Plaintiffs have plausibly alleged conduct that falls outside the narrow category of actors covered only by § 1692f(6).

2. **The FAC plausibly alleges debt-collection activity, not merely passive lien enforcement**

That is exactly what the FAC alleges. Plaintiffs do not merely allege that LWDB and Barbee prepared a notice of sale or mailed a strictly ministerial statutory form. Rather, Plaintiffs allege that on **June 18, 2025**, LWDB and Barbee sent a self-described debt-collection and foreclosure-related communication stating that the loan had been **accelerated** and listing a **"Total Loan Balance"** of

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 13

**$226,113.88**. FAC ¶ 105. Plaintiffs further allege that the same communication was sent during a validation period and did not clearly distinguish between the amount allegedly required to bring the loan current, the amount allegedly claimed because of acceleration, and other balances reflected elsewhere in Defendants' communications. FAC ¶¶ 106–108. Plaintiffs then allege that on **July 9, 2025**, during that same overall period, Defendants sent another communication stating that **$11,912.79** had to be paid to avoid foreclosure. FAC ¶ 109. Plaintiffs further allege that these communications, taken together, conveyed differing amounts, inconsistent information about cure and reinstatement, and pressure to make payment. FAC ¶¶ 110–111.

Those allegations are more than sufficient at the pleading stage. A communication may be "in connection with the collection of a debt" even if it also relates to foreclosure. As the Supreme Court recognized in *Heintz v. Jenkins*, the FDCPA applies to attorneys who regularly engage in consumer debt-collection activity, even when that activity occurs through legal proceedings or lawyer communications. 514 U.S. 291, 294–95 (1995). And appellate courts have repeatedly recognized that foreclosure-related communications that seek to induce payment can qualify as debt collection. See, e.g., *McCray v. Fed. Home Loan Mortg. Corp.*, 839 F.3d 354, 359–65 (4th Cir. 2016) (reversing dismissal of FDCPA claims against foreclosure counsel and substitute trustees where the complaint plausibly alleged debt-collection

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 14**

activity); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 461–63 (6th Cir. 2013) (holding that mortgage-foreclosure activity can constitute debt collection under the FDCPA).

The FAC therefore plausibly alleges that LWDB and Barbee were not merely enforcing a security interest in the abstract, but were communicating figures and demands in a manner designed to obtain payment on the debt itself. At the Rule 12(b)(6) stage, that is enough.

3. **Defendants' attempt to characterize the challenged communications as purely statutory notices raises factual and interpretive issues that cannot be resolved against Plaintiffs on the pleadings**

Defendants will likely argue, as they already have in their memorandum, that the challenged notices were "required by state law" and therefore fall within *Obduskey*'s protection. But that argument depends on Defendants' own characterization of the communications and their function. The FAC alleges more than the mailing of a bare statutory notice. It alleges the use of a self-described debt-collection communication, an acceleration statement, a six-figure total loan balance, a validation period, a later five-figure amount said to be necessary to avoid foreclosure, and the inclusion of additional materials that, according to Plaintiffs, conveyed inconsistent information about cure, acceleration, and status. FAC ¶¶ 105–116.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 15

At this stage, the Court must credit Plaintiffs' description of those communications and draw reasonable inferences in Plaintiffs' favor. *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014). Defendants' invitation to read the communications as purely ministerial, purely statutory, or wholly non-collection in nature is a merits argument, not a pleading-stage rule. Even if the Court ultimately concludes that some or all of the challenged communications were required by Minnesota law, that conclusion should not be reached by resolving every ambiguity against Plaintiffs on a Rule 12(b)(6) motion.

4. **Count V should not be dismissed on the pleadings merely because Defendants invoke Minnesota's counseling-notice statute**

The same is true of the Fifth Cause of Action under **15 U.S.C. § 1692c(b)**. Plaintiffs allege that LWDB and Barbee, in a communication identifying itself as one from a debt collector, stated that they had given Plaintiffs' contact information to **LSS Financial Counseling**. FAC ¶¶ 123–130. Defendants respond that Minnesota law required a transmission to an approved foreclosure-prevention counseling agency. That may ultimately present a serious defense. But at this stage, the FAC still plausibly alleges that the disclosure occurred **in connection with the collection of a debt**, within the same overall set of communications that Plaintiffs allege went beyond passive lien enforcement.

Moreover, even if the Court concludes that Minnesota law required some disclosure to a counseling agency, that would not justify dismissal **with prejudice** at the pleading stage. At minimum, Plaintiffs should be allowed to clarify by amendment the precise nature and scope of the disclosure, whether the challenged transmission was limited to what state law required, and how that disclosure fit within the broader alleged debt-collection effort. The current motion asks for too much.

5.  **The motion to dismiss the FDCPA counts with prejudice should be denied**

Even if the Court concludes that Plaintiffs' current FDCPA allegations require greater precision, dismissal **with prejudice** is not warranted. The FAC already alleges the dates, speakers, dollar figures, and communications at issue. If the Court believes Plaintiffs should plead more specifically how LWDB and Barbee allegedly crossed the line from pure security-interest enforcement into broader debt collection, that is a matter for amendment, not for a with-prejudice dismissal. Fed. R. Civ. P. 15(a)(2); *Foman v. Davis*, 371 U.S. 178, 182 (1962). The present motion therefore should be denied; at a minimum, any dismissal should be without prejudice and with leave to amend.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 17

### 6. The FAC plausibly alleges conduct that falls outside *Obduskey*'s narrow safe harbor

Pre-*Obduskey* authorities remain relevant in identifying what kinds of foreclosure-related communications plausibly amount to debt collection rather than mere security-interest enforcement. In *Heintz v. Jenkins*, the Supreme Court confirmed that the FDCPA applies to lawyers who "regularly" engage in consumer debt-collection activity, including activity undertaken through legal processes. **514 U.S. 291, 294–95 (1995).** And courts addressing foreclosure-related communications have repeatedly held that communications surrounding foreclosure may still qualify as attempts to collect a debt when they are designed to induce payment, communicate amounts due, or threaten consequences for nonpayment. See *McCray v. Fed. Home Loan Mortg. Corp.*, **839 F.3d 354, 365–69 (4th Cir. 2016);** *Glazer v. Chase Home Fin. LLC*, **704 F.3d 453, 461–64 (6th Cir. 2013).** Those authorities remain relevant because *Obduskey* did not erase the distinction between pure security-interest enforcement and broader debt-collection conduct; it simply limited the FDCPA's reach where the defendant engages in **only** nonjudicial foreclosure proceedings. *Obduskey v. McCarthy & Holthus LLP*, **586 U.S. 466, 477–78 (2019).**

The FAC's allegations here are sufficient to cross that plausibility threshold. Plaintiffs do not allege merely that LWDB and

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 18**

Barbee prepared and mailed a bare statutory notice of sale. Rather, Plaintiffs allege that LWDB and Barbee sent a self-described **debt-validation and foreclosure-related communication** that declared the loan accelerated, listed a **"Total Loan Balance" of $226,113.88**, invoked debt-collector status, and gave Plaintiffs a validation period. FAC ¶¶ 37, 105–108. Plaintiffs further allege that, during that same overall collection period, Defendants sent another notice stating that **$11,912.79** had to be paid to avoid foreclosure. FAC ¶¶ 42, 109–111. Plaintiffs also allege that the communications, taken together, conveyed materially different figures and did not clearly distinguish between the amount allegedly required to bring the loan current, the amount allegedly claimed because of acceleration, and other charges or balances reflected elsewhere in the packet. FAC ¶¶ 107–111, 113. Those allegations plausibly describe efforts to induce payment of money and to collect a debt, not merely passive lien enforcement.

That conclusion does not require the Court to reject *Obduskey*; it requires only the recognition that the FAC alleges more than the limited activity addressed there. In *Obduskey*, the Supreme Court focused on a law firm hired to carry out a Colorado nonjudicial foreclosure and held that the FDCPA's main definition of "debt collector" did not reach those who engaged in **only** such foreclosure proceedings. **586 U.S. at 477–78.** But the Court did not hold that every communication sent by foreclosure counsel is immune from scrutiny

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 19**

whenever a nonjudicial foreclosure exists in the background. Here, Plaintiffs specifically allege communications that went beyond the formal mechanics of scheduling or noticing a sale and instead sought to communicate a "Total Loan Balance," demand payment of a different five-figure amount to avoid foreclosure, and apply pressure during the validation period. FAC ¶¶ 105–114. At the pleading stage, those allegations are enough to support a reasonable inference that LWDB and Barbee were doing more than merely carrying out ministerial foreclosure steps.

Defendants will likely respond that the challenged notices were required by Minnesota foreclosure statutes and therefore remain within *Obduskey*'s protection. But that argument asks the Court to adopt Defendants' characterization of the communications rather than the FAC's. Plaintiffs do not merely allege that LWDB and Barbee sent a notice of sale or other purely statutory form. They allege the use of a debt-collection and validation notice, the declaration of acceleration, the communication of a six-figure total debt, and the later communication of a different amount allegedly necessary to avoid foreclosure. FAC ¶¶ 37, 42–43, 105–114. Whether those communications should ultimately be treated as nothing more than antecedent steps required by Minnesota law is a merits issue that should not be resolved against Plaintiffs on the face of the pleadings.

Nor does *Brian v. Gislason & Hunter LLP*, **No. 20-cv-1859 (PAM/LIB), 2021 WL 101132, at \*2 (D. Minn. Jan. 12, 2021),** compel dismissal here. In *Brian*, the district court concluded that the defendant law firm's notice to a foreclosure-prevention agency fell within Minnesota's statutory foreclosure-prevention framework and that the plaintiffs had not alleged sufficient facts to take the defendant beyond the limited-purpose category described in *Obduskey*. Id. But the FAC here alleges a broader course of conduct: not merely a counseling notice, but also a debt-validation letter, acceleration language, a stated "Total Loan Balance," inconsistent cure-related figures, and payment pressure during the validation period. FAC ¶¶ 37–43, 105–114. Those additional allegations materially distinguish this case from a complaint challenging only the transmittal of a state-law foreclosure counseling notice.

At minimum, the FAC plausibly alleges enough to allow Plaintiffs to proceed past Rule 12(b)(6) on the theory that LWDB and Barbee engaged in debt-collection activity beyond the narrow category protected by *Obduskey*. And even if the Court were to conclude that greater specificity is needed, that would warrant at most dismissal **without prejudice** and leave to amend, not dismissal with prejudice.

7. **Defendants' Regulation F safe-harbor argument is overbroad, fact-dependent, and premature at the Rule 12(b)(6) stage**

Defendants argue that the June 18, 2025 validation letter is protected by the Regulation F model-notice safe harbor. That argument is too broad for two separate reasons. First, the Regulation F safe harbor is limited by its own text. Second, whether Defendants actually satisfy that limited safe harbor on the facts alleged here is not something the Court should resolve against Plaintiffs on a motion to dismiss.

Regulation F does not provide blanket immunity from all FDCPA theories that may arise out of a communication package. The regulation states only that a debt collector who uses **Model Form B-1** complies with the **"information and form requirements"** of **12 C.F.R. § 1006.34(c)** and **(d)(1)**. It further provides a separate-page safe harbor only for certain disclosures, and even then expressly states that the safe harbor applies **"except with respect to the disclosures on the separate page."** 12 C.F.R. § 1006.34(d)(2)(i)–(ii). In other words, the safe harbor is narrow by design: it addresses compliance with specific validation-notice information and formatting requirements; it does not eliminate all possible claims under **15 U.S.C. §§ 1692e, 1692f, and 1692g** whenever a debt collector invokes or resembles Model Form B-1.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 22

That limitation matters here because Plaintiffs are not simply alleging that the June 18 letter omitted required validation language or failed to track Regulation F's required format. Instead, Plaintiffs allege that the June 18 communication, together with the enclosed or related materials and the later July 9 demand, conveyed materially inconsistent figures, blurred the line between the amount allegedly needed to cure the default and the much larger accelerated balance, and exerted payment pressure during the validation period in a misleading way. FAC ¶¶ 106–114. Those are not merely "form" objections to a validation notice. They are allegations about the combined effect, substance, and presentation of multiple communications. The text of Regulation F does not say that using Model Form B-1 immunizes a debt collector from all liability arising from the overall content or cumulative effect of the entire communication package.

The regulation itself reinforces that point in the residential-mortgage context. For residential mortgage debt, Regulation F provides a special rule under which a debt collector need not include certain itemization information in the validation notice if a periodic statement required by **12 C.F.R. § 1026.41** is provided at the same time. 12 C.F.R. § 1006.34(a)(5). But that rule does not transform the enclosed periodic statement into a shield against claims that the total package communicated inconsistent or misleading amounts. To the

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 23**

contrary, the regulation recognizes that certain information may appear on a separate page and that the safe harbor remains limited to the information-and-form requirements identified in the rule.

Defendants' argument is also premature because the safe harbor operates, at most, as a defense, and affirmative defenses ordinarily do not warrant dismissal under Rule 12(b)(6) unless the complaint itself establishes the defense. The Eighth Circuit has reiterated that, as a general rule, "the possible existence of a[n] … defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense," and that "a plaintiff need not plead facts responsive to an affirmative defense before it is raised." Here, the FAC does not establish on its face that LWDB and Barbee used Model Form B-1 in a manner that brings every challenged aspect of the June 18 and July 9 communications within the limited scope of § 1006.34(d)(2). Nor does the FAC establish that the allegedly misleading figures, the acceleration language, the later five-figure demand, and the combined presentation of the communications are all fully insulated by Regulation F's narrow form-and-information safe harbor.

At most, Defendants have raised a fact- and context-dependent defense that may be litigated on a fuller record. It does not justify dismissal of Plaintiffs' FDCPA claims at the pleading stage, much less dismissal with prejudice. For present purposes, the FAC plausibly

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 24**

alleges that the June 18 and July 9 communications, viewed together and in context, were misleading notwithstanding Defendants' later invocation of the Regulation F model-notice safe harbor. That is enough to defeat dismissal under Rule 12(b)(6).

8. **The Court should distinguish *Stuckey v. Gislason & Hunter LLP***

Defendants rely heavily on *Stuckey v. Gislason & Hunter LLP*, **No. 20-cv-1859 (PAM/LIB), 2021 WL 101132 (D. Minn. Jan. 12, 2021)**, but that decision arose from a materially different factual record and does not compel dismissal here. In *Stuckey*, the complaint challenged a single preforeclosure notice sent after the borrowers had received a bankruptcy discharge, and the notice expressly stated that the creditor did **not** seek to collect the debt as a personal liability of the borrowers. The district court emphasized that the notice acknowledged the bankruptcy proceedings, stated that it was sent to comply with Minnesota foreclosure requirements, and further noted that counsel for the borrower had been copied on the communication. *Stuckey*, 2021 WL 101132, at *2. The court also treated the transmission of borrower information to a foreclosure-prevention counseling agency as conduct required by Minnesota law in that case. Id. Those facts matter.

The FAC here alleges a materially different picture. Plaintiffs do not allege that LWDB and Barbee merely sent a single preforeclosure notice disclaiming any attempt to collect personal liability after a bankruptcy discharge. Instead, Plaintiffs allege that

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 25**

LWDB and Barbee sent a self-described **debt-validation and foreclosure-related communication**, declared the loan accelerated, listed a **"Total Loan Balance" of $226,113.88**, invoked a dispute deadline, and then—during the validation period—communicated that **$11,912.79** had to be paid to avoid foreclosure. FAC ¶¶ 105–114. Plaintiffs further allege that these communications, when read together with the other materials in the package, conveyed materially inconsistent information concerning the amount of the debt, the amount required to cure or reinstate, and the urgency of payment. FAC ¶¶ 110–111. Those allegations plausibly describe a broader debt-collection effort than the limited statutory notice at issue in *Stuckey*.

*Stuckey* is also distinguishable because Judge Magnuson emphasized that the plaintiffs there had not plausibly alleged that the law firm was acting as a primary-purpose debt collector or otherwise outside the limited category described in *Obduskey*. *Stuckey*, 2021 WL 101132, at *2. Here, by contrast, the FAC alleges not only that LWDB and Barbee regularly collect or attempt to collect defaulted mortgage debts owed to another, but also that their specific communications in this case went beyond the bare statutory mechanics of a nonjudicial foreclosure. FAC ¶¶ 104–117. At the pleading stage, those factual allegations must be accepted as true, and the Court must draw reasonable inferences in Plaintiffs' favor rather than in Defendants' favor.

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 26

Nor does *Stuckey* eliminate the need to examine the actual communications alleged in this case. The communications challenged in the FAC include a debt-validation letter, a stated accelerated balance, a separate five-figure demand to avoid foreclosure, and allegedly conflicting cure-related information conveyed during the validation period. FAC ¶¶ 105–114. That is not the same factual posture as a single notice expressly disavowing personal liability while complying with state foreclosure procedure. In short, *Stuckey* turned on a narrower and materially different set of allegations.

For those reasons, *Stuckey* does not require dismissal of Count IV at the pleading stage. At most, it provides Defendants with an argument on a fuller factual record. It does not justify dismissal with prejudice of Plaintiffs' FDCPA claims based on the allegations actually pleaded here.

## B.  COUNT V SHOULD NOT BE DISMISSED WITH PREJUDICE

Count V arises from Plaintiffs' allegation that LWDB and Barbee disclosed Plaintiffs' contact information to **LSS Financial Counseling** while simultaneously identifying themselves as debt collectors and doing so as part of the same overall debt-collection and foreclosure-related communication package. FAC ¶¶ 123–130. Defendants respond that Minnesota law required communication with an approved foreclosure-prevention counseling agency. That statutory point is serious. Minnesota law does require that, before the relevant foreclosure filing is recorded, the party foreclosing a mortgage provide notice that

it **will transmit the homeowner's name, address, and telephone number** to an approved foreclosure-prevention agency, and the statute-prescribed form expressly states: **"We have given your contact information to an authorized foreclosure prevention counseling agency to contact you to help you prevent foreclosure."** Minn. Stat. §§ 580.021, subd. 2(2), 580.022, subd. 1.

But that statutory framework does not justify **with-prejudice dismissal on the pleadings**. At most, it establishes that Defendants have a substantial merits defense if the challenged disclosure was limited to exactly what Minnesota law required and was transmitted in exactly the manner contemplated by those statutes. The FAC, however, alleges the disclosure in the context of a self-described debt-collection communication and alleges that the challenged communication formed part of a broader debt-collection and foreclosure-related package. FAC ¶¶ 123–130. At the Rule 12(b)(6) stage, the Court need not and should not assume that every aspect of the challenged disclosure necessarily fell within the precise boundaries of §§ 580.021 and 580.022.

That distinction matters because the Minnesota statutes are narrow. Section 580.021 speaks in terms of the transmission of the homeowner's **name, address, and telephone number** to an approved agency, and the form in § 580.022 mirrors that limited disclosure. The FAC can fairly be read to challenge not merely the existence of any agency contact, but the manner, context, and scope of the disclosure within an overall communication that also invoked debt-collector status and foreclosure-related payment pressure. If Plaintiffs are required to be more specific about whether they contend that Defendants disclosed

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 28**

information beyond the narrow fields Minnesota law identifies, or whether they contend that the communication went beyond what state law required because of how it was packaged and presented, those are matters that can readily be cured by amendment.

That is why dismissal **with prejudice** is not appropriate. Even if the Court concludes that Count V, as presently framed, is vulnerable in light of Minnesota's counseling-notice statutes, Rule 15 still provides that leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). At minimum, Plaintiffs should be allowed to clarify by amendment:

a. The precise scope of the disclosure they challenge;

b. Whether they contend the disclosure exceeded the name, address, and telephone number referenced in § 580.021;

c. Whether the challenged communication was integrated into a broader debt-collection campaign in a way not required by state law; and

d. Whether Count V should be narrowed, repleaded, or reframed in light of Defendants' statutory argument.

Accordingly, if the Court is not prepared to deny dismissal of Count V outright, the Court should at minimum deny Defendants' request for dismissal **with prejudice** and instead grant leave to amend. That result would be especially appropriate here, where Plaintiffs are proceeding pro se and where the issue turns on the precise interaction between a federal debt-collection statute and a Minnesota foreclosure-counseling notice scheme that is both specific and narrow.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 29**

**C. COUNT VI SHOULD NOT BE DISMISSED WITH PREJUDICE BECAUSE IT SEEKS DECLARATORY AND INJUNCTIVE RELIEF BASED ON A LIVE, PRESENT CONTROVERSY AND ON SURVIVING SUBSTANTIVE CLAIMS**

Defendants argue that Count VI fails because declaratory judgment is a remedy rather than an independent cause of action and because some of the requested declarations concern duties that run primarily to Chase as the holder or servicer of the loan. Plaintiffs do not dispute that declaratory and injunctive relief are remedial in nature. But that does not support dismissal **with prejudice**, and it does not justify removing LWDB and Barbee from all prospective relief tied to the challenged foreclosure conduct.

Under **28 U.S.C. § 2201**, a federal court may declare the rights and legal relations of interested parties in a case of actual controversy within its jurisdiction. **28 U.S.C. § 2202** further authorizes "[f]urther necessary or proper relief" based on a declaratory judgment, and **Fed. R. Civ. P. 57** confirms that declaratory relief is procedurally proper in federal court. The Declaratory Judgment Act does not create new substantive rights, but it does provide a proper procedural vehicle to obtain judicial clarification of existing rights and legal relations where a concrete controversy exists. Likewise, **Fed. R. Civ. P. 65** authorizes temporary, preliminary, and permanent injunctive relief where the applicable standards are met.

That is precisely what Plaintiffs seek here. Count VI is not an effort to plead a free-floating damages claim against LWDB and Barbee. Rather, it is a

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 30**

request for judicial clarification and prospective restraint with respect to an ongoing foreclosure dispute. The FAC alleges that the scheduled **August 26, 2025** sheriff's sale did **not** occur, yet the loan allegedly remained in an "ACTIVE, NO SALE DATE" posture as of **September 10, 2025**, while Plaintiffs continued receiving inconsistent information concerning reinstatement, acceleration, cure amounts, and foreclosure status. FAC ¶¶ 141–149. Those allegations describe a live controversy over what steps may lawfully be taken next, what amount—if any—would properly reinstate the loan, whether and under what conditions foreclosure activity may resume, and when any foreclosure-based right to possession could arise.

That controversy is neither abstract nor hypothetical. Plaintiffs are not asking the Court to issue an advisory opinion about a completed foreclosure sale that has already become moot. They allege that the challenged foreclosure activity was initiated, that the scheduled sale was cancelled or did not occur, that the account remained in a foreclosure posture, and that future foreclosure-based steps remained possible. FAC ¶¶ 141–149. At the pleading stage, those allegations are sufficient to establish a present dispute concerning the parties' legal rights and obligations going forward. A declaration resolving those issues would clarify the parties' legal relations and would serve a concrete, practical purpose.

Defendants are correct that some of the substantive duties underlying Count VI may run primarily to Chase. For example, **Minn. Stat. § 580.30** places the reinstatement-amount obligation on the mortgage holder, and **Minn. Stat. § 582.043** applies to a servicer. But that point does not mean Count VI must be

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 31**

dismissed with prejudice as to LWDB and Barbee. At most, it means that some requested declarations may ultimately run more directly against Chase than against foreclosure counsel. That is a question of **scope and framing of relief**, not a basis for wiping out the count with prejudice.

That distinction matters because Count VI is tethered to substantive claims that unquestionably remain in the case, including the RESPA/Regulation X claim, the Minnesota loss-mitigation and dual-tracking claim, the TILA/Regulation Z claim, the reinstatement claim, and the contract-based claim. Where declaratory and injunctive relief are sought as remedies ancillary to substantive claims, courts do not ordinarily dismiss them with prejudice merely because they are styled as a separate count. If the Court concludes that Count VI should be treated as a remedies count rather than an independent claim, the appropriate response is to construe it accordingly or to narrow it—not to eliminate it with prejudice.

LWDB and Barbee are also not strangers to the prospective relief Plaintiffs seek. The FAC alleges that they prepared, signed, transmitted, and/or sent the challenged debt-validation and foreclosure-related communications, participated in advancing the foreclosure by advertisement, and were involved in the notices and materials Plaintiffs contend were misleading and part of the challenged foreclosure path. FAC ¶¶ 37–42. If Plaintiffs are entitled to an injunction preventing further foreclosure-based enforcement unless and until applicable law is followed, it is neither improper nor unnecessary to include the attorneys alleged to be carrying out those steps.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 32**

That is reinforced by **Fed. R. Civ. P. 65(d)(2)**, which expressly provides that an injunction binds not only the parties, but also their officers, agents, servants, employees, and attorneys who receive actual notice of the order. In other words, even where the underlying duty may rest primarily on Chase, LWDB and Barbee are still proper participants in a count seeking prospective relief aimed at halting further foreclosure-related action taken on Chase's behalf. Their alleged role in the challenged conduct is enough, at minimum, to keep them within the scope of the requested prospective relief at the pleading stage.

Defendants' ripeness argument also does not justify with-prejudice dismissal of the entire count. It may be true that certain declarations tied specifically to a completed foreclosure sale or an expired redemption period would be premature if no sale occurred. But Count VI is broader than that. It also seeks present clarification concerning reinstatement, acceleration, future foreclosure compliance, and the conditions under which any right to possession may later arise. The fact that some requested declarations may require narrowing does not mean the entire count fails. A federal court may grant declaratory relief as to ripe disputes and decline or narrow relief as to any aspect it finds premature. That sort of narrowing is a far more appropriate remedy than dismissal with prejudice.

The same is true of the injunction request. Defendants argue Plaintiffs cannot establish irreparable harm or likely success, but those arguments go to the ultimate availability and scope of equitable relief, not to whether Plaintiffs may plead a request for such relief in the FAC. Count VI alleges continuing

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 33**

uncertainty regarding reinstatement, continued foreclosure pressure, increased charges, and the risk of further foreclosure-based action before the parties' rights are clarified. FAC ¶ 149. At the pleading stage, those allegations are sufficient to preserve Plaintiffs' request for equitable relief. Whether Plaintiffs can ultimately satisfy all elements necessary for preliminary or permanent injunctive relief is a later question.

For all of these reasons, Count VI should not be dismissed with prejudice. If the Court concludes that some portion of Count VI is better framed as a remedy rather than a stand-alone cause of action, or that some requested declaration should be narrowed or directed primarily against Chase, the appropriate course is to construe or narrow the count accordingly, or to grant leave to amend. What the Court should not do is eliminate with prejudice Plaintiffs' request for declaratory and injunctive relief tied to an ongoing foreclosure controversy and to substantive claims that remain in the case.

## D. COUNT IX STATES A PLAUSIBLE CLAIM UNDER THE MINNESOTA CONSUMER FRAUD ACT, OR AT MINIMUM SHOULD NOT BE DISMISSED WITH PREJUDICE

Defendants' central argument against Count IX is that the FAC does not allege a "sale of merchandise" or a sufficient nexus to one. That argument is too narrow in light of the current statutory text. Minnesota now expressly defines **"merchandise"** to include not only goods, but also **"intangibles, real estate, loans, or services."** Minn. Stat. § 325F.68, subd. 2. Minnesota also defines **"sale"** broadly to mean **"any sale, offer for sale, or attempt to sell any merchandise**

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 34

for any consideration." Minn. Stat. § 325F.68, subd. 4. And the Minnesota Consumer Fraud Act prohibits the use of fraud, unfair or unconscionable practices, false pretenses, false promises, misrepresentations, misleading statements, or deceptive practices, with the intent that others rely on them, **"in connection with the sale of any merchandise."** Minn. Stat. § 325F.69, subd. 1.

That statutory language matters here. The FAC does not concern a random, unrelated post-transaction collection effort divorced from the underlying consumer transaction. It concerns communications about an **ongoing home mortgage loan**, the alleged amount necessary to cure or reinstate that loan, the effect of acceleration, the treatment of corporate advances, and the amounts allegedly necessary to avoid foreclosure. A mortgage **loan** is expressly included within the statutory definition of "merchandise," and so are related **services**. Minn. Stat. § 325F.68, subd. 2. As a result, Defendants' premise that there was no qualifying "sale of merchandise" is inconsistent with the current statutory text.

The FAC also plausibly alleges the required connection between the challenged conduct and the consumer transaction. Plaintiffs allege that Chase, LWDB, and Barbee sent materially inconsistent and misleading communications about the amount required to cure or reinstate the loan, including figures of **$6,915.38, $8,791.71, $226,113.88, $11,912.79**, and later **$21,966.11** and **$231,691.91**. FAC ¶¶ 182–186. Plaintiffs further allege that those communications were intended to induce Plaintiffs to rely on them in deciding what to pay, whether and how to seek assistance, and how to respond to the threatened foreclosure. FAC ¶ 189. That is enough, at the pleading stage, to allege

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 35**

misleading statements made with the intent that Plaintiffs rely on them in connection with a home mortgage loan and related loan-servicing activity. Minn. Stat. § 325F.69, subd. 1.

Count IX is also adequately pleaded under federal standards. Even if the Court applies Rule 9(b)'s particularity requirement to this MCFA theory, the FAC identifies the **who** (Chase, LWDB, and Barbee), the **what** (conflicting cure, reinstatement, and acceleration figures and related foreclosure notices), the **when** (April 18, May 12, June 18, July 9, and October 11, 2025), and the **how** (allegedly misleading Plaintiffs about what amount had to be paid and how to avoid foreclosure). Rule 9(b) requires that the circumstances constituting fraud be stated with particularity, but it also allows intent and similar states of mind to be alleged generally. Fed. R. Civ. P. 9(b). The FAC clears that bar.

In addition, Minnesota now expressly authorizes a private consumer action for violations of §§ 325F.68 to 325F.70. A consumer injured by such a violation, in connection with a sale of merchandise for personal, family, household, or agricultural purposes, may bring a civil action, recover damages, costs and disbursements, including investigation costs and reasonable attorney fees, and obtain equitable relief. The statute further states that an action brought under that subdivision **"benefits the public."** Minn. Stat. § 325F.70, subd. 3. That statutory text undercuts any argument that Count IX fails simply because Plaintiffs are private litigants challenging deceptive loan-servicing and foreclosure-related communications.

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 36**

At minimum, even if the Court concludes that Count IX should be narrowed as to LWDB and Barbee, dismissal **with prejudice** would be unwarranted. The current statute expressly reaches loans and services, and Plaintiffs have alleged a specific set of communications, dates, amounts, and intended reliance. If the Court believes that additional precision is required as to the exact connection between LWDB/Barbee's communications and the sale, offer for sale, or attempt to sell merchandise, that would be a matter for amendment, not a basis for foreclosing the claim permanently at the pleading stage.

## E. EVEN IF THE COURT FINDS ANY COUNT INADEQUATELY PLED, DISMISSAL WITH PREJUDICE SHOULD BE DENIED AND LEAVE TO AMEND SHOULD BE GRANTED

Even if the Court concludes that one or more of the challenged counts is inadequately pleaded as to LWDB and Barbee, Defendants' request for dismissal **with prejudice** should still be denied. At this stage of the case, the issue is one of pleading sufficiency, not adjudication on a full factual record. Where a defect is potentially curable, the Federal Rules strongly favor amendment rather than permanent dismissal.

That principle is built directly into **Fed. R. Civ. P. 15(a)(2)**, which provides that the Court "should freely give leave" to amend "when justice so requires." The Supreme Court has made clear that leave to amend should ordinarily be granted absent circumstances such as **undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments**

PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 37

**previously allowed, undue prejudice to the opposing party, or futility of amendment.** *Foman v. Davis*, **371 U.S. 178, 182 (1962).**

None of those circumstances is present here. Plaintiffs are proceeding **pro se**. They already amended once, but that amendment was made primarily in response to Defendants' procedural objections concerning the original complaint's length, structure, and clarity. In other words, the prior amendment was not a repeated refusal to cure merits-based deficiencies after a judicial ruling; it was an effort to shorten, reorganize, and clarify the pleading so the case could proceed on a cleaner operative complaint. The present motion is the first focused Rule 12(b)(6) merits challenge directed specifically at the subset of claims against LWDB and Barbee.

That distinction matters. A plaintiff should not be deemed to have "repeatedly failed to cure deficiencies" where the prior amendment was directed mainly at format, organization, and scope rather than at the specific legal arguments now raised in a targeted dismissal motion. Nor is there any indication of bad faith or dilatory motive. To the contrary, the record reflects that Plaintiffs attempted to respond to defense concerns by filing a substantially shorter amended complaint and by continuing to engage in the meet-and-confer process before and after the present motion was filed.

There is likewise no meaningful prejudice to LWDB and Barbee in allowing further amendment if the Court concludes amendment is necessary. This case remains at the pleading stage as to the moving defendants. No merits discovery has occurred on the challenged claims. No trial date has been set on

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 38**

those issues. The moving defendants have already identified with precision the legal theories they believe are defective. If the Court agrees with any part of their position, allowing Plaintiffs to amend in response would sharpen the pleadings, narrow the issues, and conserve judicial resources more effectively than a with-prejudice dismissal followed by potential motion practice over reconsideration, appeal, or collateral amendment requests.

Nor can it be said, on this record, that amendment would necessarily be futile. At a minimum, the challenged counts could be narrowed or clarified in several concrete ways:

a. **Count IV (FDCPA §§ 1692e, 1692f, 1692g):** Plaintiffs could plead additional facts clarifying why LWDB and Barbee allegedly acted beyond the narrow category of persons engaged in only nonjudicial foreclosure proceedings, including the role and function of the June 18 and July 9 communications, the payment pressure allegedly exerted by those communications, and the relationship between the asserted debt amounts and the threatened foreclosure.

b. **Count V (§ 1692c(b)):** Plaintiffs could clarify the precise scope and nature of the challenged disclosure to LSS Financial Counseling, whether the disclosure allegedly exceeded the narrow information contemplated by Minnesota's foreclosure-counseling statutes, and whether the claim is directed at the

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 39**

context and manner of the disclosure within a broader debt-collection communication package.

c. **Count VI (declaratory and injunctive relief):** Plaintiffs could expressly restyle that count as a remedial count or as a request for prospective relief ancillary to surviving substantive claims, and could narrow the requested declarations or injunctions as to particular defendants if the Court believes some forms of relief run primarily against Chase.

d. **Count IX (MCFA):** Plaintiffs could plead with even greater specificity the role of LWDB and Barbee in the allegedly deceptive communications, the statutory connection to a "loan" or "services" under Minnesota law, and the intended reliance and injury resulting from each challenged communication.

These are not speculative possibilities. They are straightforward pleading refinements that go directly to the objections raised in the motion. That is precisely the type of situation in which Rule 15's liberal amendment policy applies most strongly.

This is especially true because Defendants seek dismissal **with prejudice**, which would permanently bar Plaintiffs from attempting to replead these theories against LWDB and Barbee. Such a harsh result is not warranted where the disputed issues concern the scope of *Obduskey*, the interaction between Minnesota foreclosure statutes and the FDCPA, the framing of a declaratory-relief count, and the specificity of a consumer-fraud theory under current Minnesota law. Those are legal-scope and

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 40**

pleading-precision disputes — not the kind of plainly incurable defects that justify immediate dismissal with prejudice at the Rule 12(b)(6) stage.

Accordingly, even if the Court concludes that any portion of Counts IV, V, VI, or IX should be narrowed, clarified, or repleaded, the Court should deny dismissal with prejudice and grant Plaintiffs leave to amend. At minimum, the Court should dismiss without prejudice and allow Plaintiffs a reasonable period to file a further amended complaint directed specifically to the concerns identified by the Court.

## V.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants Liebo, Weingarden, Dobie & Barbee, P.L.L.P. and Craig M. Barbee's Motion to Dismiss in its entirety.

In the alternative, if the Court concludes that any portion of the Fourth, Fifth, Sixth, or Ninth Causes of Action is insufficiently pleaded as to those Defendants, Plaintiffs respectfully request that the Court deny Defendants' request for dismissal **with prejudice** and instead dismiss, if at all, only **without prejudice**.

In the further alternative, if the Court determines that any claim should be narrowed, clarified, or repleaded, Plaintiffs respectfully request leave to amend under **Fed. R. Civ. P. 15(a)(2)** within a reasonable time set by the Court, so that Plaintiffs may address any pleading concerns identified in the Court's ruling.

Plaintiffs further request that, to the extent the Court concludes that Count VI is more properly understood as a request for declaratory and injunctive relief ancillary to surviving substantive claims rather than as a stand-alone count against all moving

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 41**

Defendants, the Court construe or narrow that count accordingly rather than dismiss it with prejudice.

Plaintiffs also request such other and further relief as the Court deems just, equitable, and proper under the circumstances.

**DATED:** May 6, 2026

**Respectfully submitted,**

Bradley Scott Buller, Pro Se
1593 Schmitz Rd
Carlton, MN 55718
(907) 223-2611
bradley.buller@icloud.com

Carrie Buller, Pro Se
1593 Schmitz Rd
Carlton, MN 55718
(907) 223-2611
bradley.buller@icloud.com

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P. AND CRAIG M. BARBEE'S MOTION TO DISMISS - 42**