## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| BRADLEY SCOTT BULLER, *et al.*, | Civil File No.: 0:26-cv-01150-PJS-LIB |
| Plaintiffs, | |
| | **DEFENDANTS LIEBO, WEINGARDEN, DOBIE & BARBEE, P.L.L.P., AND CRAIG M. BARBEE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |
| vs. | |
| JP MORGAN CHASE BANK, N.A., *et al.*, | |
| Defendants. | |

## I.      Introduction

Though the Bullers, to their credit, voluntarily amended their complaint [*see* Dkt. 13, 15-16], the FAC remains neither "short" nor "plain." *See* Fed. R. Civ. P. 8. Indeed, they have spilt enough ink to pool into 194 complaint allegations and more than 30 pages of opposition briefing. [*See* Dkt. 16, 30, 30-2.]

Magistrate Tony Leung once remarked about the difficulty imposed upon defendants like LWDB and attorney Barbee "where [an] unrepresented plaintiff has submitted a complaint that fails to set forth the allegations with reasonable clarity and succinctness," leaving the responding defendant "shadowboxing against all of the claims that the pro se litigant *could* be making." *Favors v. Lourey*, No. 19-cv-0032, 2019 WL 3043958, at *2 (D. Minn. June 18, 2019).

The Bullers' Response does not remedy the pleading problem. And so, the defendants are left to discern which shadows to attack or defend. As a matter of best guess, the gravamen of the Bullers' attempted claim against LWDB and attorney Barbee appears

rooted in the FDCPA, specifically tethered to two mailings, one dated June 18, 2025, and another dated July 9, 2025. [FAC ¶ 113, Exs. B, D-E.]

Relevant to this motion, the Bullers assert in the FAC:

104.    On information and belief, Defendants Liebo, Weingarden, Dobie & Barbee, P.L.L.P. and Craig M. Barbee regularly collect or attempt to collect defaulted mortgage debts owed to another, and in the communications at issue they acted as debt collectors within the meaning of the FDCPA.

105.    On June 18, 2025, Defendants sent Plaintiffs a written debt-collection and foreclosure-related communication stating that the loan had been accelerated and listing a "Total Loan Balance" of $226,113.88.

106.    Plaintiffs further allege that the June 18, 2025 communication expressly identified itself as a communication from a debt collector and sought payment in connection with the mortgage debt.

[…]

112.    On July 9, 2025, during the validation period, Defendants sent Plaintiffs a "Help for Homeowners in Foreclosure" notice stating that $11,912.79 had to be paid to avoid foreclosure and identifying a sheriff's sale date of August 26, 2025.

113.    Plaintiffs allege that the June 18, 2025 and July 9, 2025 communications, taken together, stated differing amounts and conveyed inconsistent information about the amount of the debt, the amount required to cure or reinstate, and the urgency of payment.

[…]

127.    Plaintiffs allege that, by giving Plaintiffs' contact information to LSS Financial Counseling in connection with collection of the mortgage debt, Defendants communicated with a third party in connection with the collection of a debt.

[FAC ¶¶ 104-106, 112-113, 127.]

In their Response, the Bullers posit that "[t]he FAC plausibly alleges that LWDB and [attorney] Barbee engaged in conduct that went beyond the bare ministerial steps

2

required to conduct a Minnesota foreclosure by advertisement." [Resp. at 5.] Specifically, they appear to contend that a law firm's:

- Self-identification as a "debt collector" in written correspondence is sufficient to demonstrate the firm is in fact acting as primary-definition "debt collector" under the FDCPA. [Resp. at 5; *see also Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 473-477 (2019); 15 U.S.C. § 1692a(6).]

- Description of the underlying loan amount and state of the arrearage constitutes "debt collection," rather than security-interest enforcement. [Resp. at 5; *Obduskey*, 586 U.S. at 473-74; 15 U.S.C. § 1692(6) ("For the purpose of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.").]

- Inclusion of § 1692g disclosures in borrower correspondence somehow transforms non-judicial foreclosure activity into "debt collection." [Resp. at 5; *see also* 15 U.S.C. § 1692g.]

As discussed below, none of these contentions, even construed in the Bullers' favor, plausibly allege that LWDB and attorney Barbee did anything other than engage in lawful security-interest enforcement, subjecting them only to § 1692f(6) of the FDCPA. Nothing in the Bullers' FAC or their Response illuminates a viable cause against LWDB or attorney Barbee under any other statute, law, or theory in this matter. Dismissal with prejudice as to all of the Bullers' attempted claims remains warranted as a result.

II.   **The Bullers' Threadbare Recitals Regarding LWDB and Attorney Barbee's Alleged Status as "Debt Collectors" Do Not Carry Their Attempted FDCPA Claim Across the Plausibility Threshold**

The Bullers appear to concede that the Supreme Court demarcated the lone FDCPA provision applicable to security-interest enforcers—specifically including law firms prosecuting non-judicial foreclosures—from the complete list of FDCPA requirements and

3

prohibitions applicable to debt collectors engaged in debt collection. [Resp. at 5-6; *Obsuskey* at 473-81 (security-interest enforcers only subject to § 1692f(6), "debt collectors" subject to all FDCPA provisions).]

This is fatal to the Bullers' attempted FDCPA theories—all of which require a finding that LWDB and attorney Barbee are "debt collectors" under the primary FDCPA definition. *See Czepa v. Lexington Roofing & Remodeling, Inc. and Law Office of Richard M. Schultz, Ltd.*, No. 24-4359 (NEB/JFD), Mem. Op. and Order dated June 27, 2025.[1]

### III.    In Any Event, the Supreme Court's *Obduskey* Decision Does Indeed Bar the Bullers' Attempted FDCPA Claims

The Bullers argue that LWDB and attorney Barbee "did **more than** carry out the antecedent, ministerial steps required by Minnesota foreclosure law." [Resp. at 13-16.] The FAC allegations and exhibits themselves confirm that is not correct.

Thus, even if the Bullers had plausibly alleged LWDB and attorney Barbee somehow could be considered "debt collectors" subject to the full FDCPA (which they have not), their claims still would fail as a matter of law because those defendants engaged only in the enforcement of a security interest vis-à-vis the Bullers, not "debt collection" as "debt collectors."

---

[1] The undersigned (who represented the law firm defendant in *Czepa*) has been unable to locate a copy of the referenced dismissal order on Westlaw and so attaches a copy of the order filed on the docket as Exhibit A to this memorandum.

A.     **Self-Identifying as a "Debt Collector" in Written Correspondence with the Borrower Does Not Make a Law Firm a "Debt Collector" Engaged in "Debt Collection"**

The Bullers suggest LWDB and attorney Barbee "self-described" their written correspondence sent in connection with the non-judicial foreclosure[2] as "debt collection," thus rendering them "debt collectors." [Resp. at 5.] They further argue the June 18, 2025, foreclosure packet's inclusion of the so-called "mini-Miranda" brings LWDB's and Barbee's communications within the ambit of the FDCPA. [Resp. at 47, 58.]

But those phrases do not transform LWDB's and attorney Barbee's non-judicial foreclosure activities into the collection of a debt subject to the entire FDCPA. As the Eighth Circuit has explained:

> At first glance, it may seem implausible that a communication labeled by the sender as "for the purpose of collecting a debt" would, in fact, not be sent "in connection with the collection of a debt". But these types of boilerplate [mini-Miranda] disclosures, *see* 15 U.S.C. § 1692e(11), "do[ ] not automatically trigger the protections of the FDCPA, just as the absence of such [disclosures] does not have dispositive significance." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 386 n.3 (7th Cir. 2010); *see also Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 399-400 (6th Cir. 1998) (similar). Rather, we look to the *substance* of the letter—what information it provides and what it asks the borrower to do—to determine whether an "animating

---

[2] A review of the exhibits appended to the FAC reveals the following emblematic statements:

- "In the event required by Federal Law: This is a communication from a debt collector;"

- "this communication is from a debt collector";

- "Where required by Federal law, be advised: Our office is a debt collector."

[FAC Exs. A-B, D-E.]

5

purpose" is "to induce payment by the debtor." [*McIvor v. Credit Control Servs., Inc.*, 773 F.3d 909, 914 (8th Cir. 2014)] (citation omitted). And here, for the reasons we have already explained, the letters did not try to induce Heinz to pay his outstanding debt. We thus conclude that a routine disclosure statement that is at odds with the remainder of the letter does not turn the communication into something that it is not—in this case, a communication made in connection with the collection of a debt for the purposes of the FDCPA. *See* [*Goodson v. Bank of Am., N.A.*, 600 F. App'x 422, 432 (6th Cir. 2015)] ("[T]he standard disclaimer language—which stated that BANA was '*a debt collector attempting to collect a debt*'—did not, by itself, transform the informational letter into debt collection activity. Courts have found that a disclaimer identifying the communication as an 'attempt to collect a debt[ ] ... does not automatically trigger the protections of the FDCPA.'" (second and third alterations in original) (citation omitted)).

Although nonjudicial foreclosure is a debt collection activity, it does not follow that any communication generated during a nonjudicial foreclosure is made "in connection with the collection of a debt." See *McIvor*, 773 F.3d at 915 ("[The debtor] contends that *any* communication about a debt from a debt collector to a consumer reporting agency is *always* intended to facilitate collection. We decline to draw such a sweeping conclusion ...."). Thus, we must look at each communication individually to determine whether it was made in connection with the collection of a debt for purposes of the FDCPA.

Considering the content of each of the communications, we conclude that none were made in connection with the collection of a debt. First, the October 8, 2017 letter was nothing more than a notification that Heinz's loss mitigation assistance application had been cancelled due to Heinz's failure to provide the required documentation. Although the letter stated, "if your loan is delinquent collection activity may continue, including referral to foreclosure or foreclosure sale," this boilerplate, conditional reference to collection activities, which uses the word "if," does not mean that the letter was sent "in connection with the collection of a debt," particularly where the only reference to the loan was its identifying information, including the property address and loan number, and the letter did not contain any information about the loan, such as the principal amount remaining due, the past due amount, or a request for payment. See *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 388-89 (7th Cir. 1998) (holding that the communication was not made in connection with the collection of a debt because it merely described the status of the debtor's account and the consequences of missing future payments).

6

*Heinz v. Carrington Mortg. Servs., LLC*, 3 F.4th 1107, 1114 (8th Cir. 2021) (footnote omitted).

In their Response, the Bullers repeat various permutations of the phrase "designed to induce payment" in reference to LWDB and attorney Barbee's correspondence relative to the non-judicial foreclosure [*see* Resp. at 13-14, 18-19, 35], but that is insufficient to stave off dismissal for two reasons.

***First***, the Bullers do not allege in the FAC that any communication from LWDB or attorney Barbee was designed to induce payment. [*See generally* Dkt. 16.] Thus, they have not plausibly alleged *anything* with respect to those communications that would establish their animating purpose was to induce payment.

***Second***, it is well-established that a party may not amend a pleading by briefing. *Morgan Distributing Co., Inc. v. Undfynamic Corp.*, 868 F.2d 992, 995 (8th Cir. 1989) ("it is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss") (citation modified). In any event, the Bullers fail to meaningfully argue how or why any of the correspondence referenced in or attached to the FAC constitute anything other than permissible and lawful communications made in connection with the enforcement of a security interest.

The Bullers citation to two out-of-circuit, pre-*Obduskey* cases—*Glazer v. Chase Home Financial, LLC*, 704 F.3d 453 (6th Cir. 2013) and *McCray v. Federal Home Loan Mortgage Corp.*, 839 F.3d 354 (4th Cir. 2016)—do not change this result.

The *Glazer* opinion is unhelpful because *Obduskey* abrogated it. *See Obduskey*, 586 U.S. 466 (prefatory "Holding" comment noting abrogation of *Glazer*).

7

The Bullers' reliance on the Fourth Circuit's *McCrary* holding is likewise misplaced because that case concerned a *judicial* foreclosure. 839 F.3d at 357 (noting the defendants "commenced the foreclosure proceeding in state court").

The Bullers' reference to *Heintz v. Jenkins* is puzzling. To be sure, LWDB and attorney Barbee are not arguing that attorneys or law firms can *never* be subject to FDCPA claims—the Supreme Court rejected that position in *Heintz*. 514 U.S. 291, 292 (1995) (holding that "[the FDCPA] applies to a lawyer who 'regularly' *through litigation*, tries to collect consumer debts"). They simply are not debt collectors engaged in the collection of a debt, as the FDCPA contemplates those concepts in the primary definition, where, as here, they engage in non-judicial foreclosure pursuant to Minnesota law.

### B.    Providing FDCPA Disclosures or Information Does Not Make the Sender a "Debt Collector" Engaged in "Debt Collection" Either

Sending a notice including the language required by 15 U.S.C. § 1692g(a) does not make LWDB or attorney Barbee "debt collectors" engaged in "debt collection."  The law firm in *Obduskey* sent a validation notice with language compliant with § 1692g(a), but that was not enough to render them "debt collectors" engaged in "debt collection." *See Obduskey v. Wells Fargo*, No. 22-1156, 2023 WL 1831128, at *2 (10th Cir. Feb. 9, 2023).

Similarly, in *Stuckey v. Gislason & Hunter LLP*,[3] the law firm engaging in non-judicial foreclosure of the borrower's real property also sent a communication to the borrower providing the language prescribed by 15 U.S.C. § 1692g(a). No. 20-cv-1859

---

[3] Incorrectly cited nominally in LWDB and attorney Barbee's opening memorandum as "*Brian v. Gislason & Hunter LLP*."

(PAM/LIB), 2021 WL 101132, at *1 (D. Minn. Jan. 12, 2021).[4]  Regardless of the fact that the letter identified the law firm as a "debt collector," the court held that the law firm was *not* a debt collector under the FDCPA.  *Id.* at *1-3.[5]

Other courts have reached similar conclusions:

- *Barber v. S.D.B. Dev., L.P.*, No. 1:21-CV-539, 2022 WL 3205611, at *3 (E.D. Tex. June 23, 2022), *report and recommendation adopted*, No. 1:21-CV-539, 2022 WL 3162344 (E.D. Tex. Aug. 5, 2022) (dismissing *pro se* plaintiff's FDCPA claim under *Obduskey* and finding a law firm was not a debt collector even though they "represented themselves to be debt collectors, advised [plaintiff] of their rights under the FDCPA to dispute the debt, but then failed to respond to their request for validation");[6]

- *Brackenridge v. Wells Fargo Bank N.A.*, No. 4:25-CV-502-P, 2025 WL 4475748, at *5 (N.D. Tex. Nov. 18, 2025) (dismissing *pro se* plaintiffs' FDCPA claims under 15 U.S.C. §§ 1692g(b), 1692e(2)(A), and 1692f(1) under *Obduskey*).

Here, as noted in the foregoing authority, the § 1692g(a) language used by LWDB and attorney Barbee in the communications they sent to the Bullers in connection with the non-judicial foreclosure does not bring them LWDB or attorney Barbee within the primary definition of "debt collector" under the FDCPA.

### C.  Antecedent Steps Do Not Render the FDCPA Applicable to LWDB's and Attorney Barbee's Communications

The Supreme Court made clear in *Obduskey* that a law firm's antecedent steps taken in furtherance of a non-judicial foreclosure pursuant to state law do not constitute "debt

---

[4] A copy of the *Stuckey* letter is attached as Exhibit B.

[5] *See* noticed described at n.4 *supra* and attached regarding the "debt collector" description.

[6] A copy of the *Barber* letters are attached hereto as Exhibit C.

collection" subject to the full FDCPA. *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 480, 139 S. Ct. 1029, 1039, 203 L. Ed. 2d 390 (2019)

Such steps include sending the Bullers' contact information to LSS Financial Counseling (or another approved organization) under Minnesota Statutes § 580.021, subdiv. 2(2). *Stuckey*, 2021 WL 101132, at *2.

Indeed, LWDB and attorney Barbee took a number of antecedent steps required under state law in furtherance of the non-judicial foreclosure in issue, none of which transform their efforts into debt collection. For example, providing the Bullers with information regarding their redemption rights. [FAC Ex. B; Minn. Stat. § 580.23.] Or the Foreclosure: Advice to Tenants Notice required by Minn. Stat. § 580.042.

Providing information required by statute is by definition an antecedent step necessary to enforce the security interest and proceed with the nonjudicial foreclosure and cannot give rise to FDCPA liability. *Id.*

### D. Communications from Chase to the Bullers Do Not Support a FDCPA Claim against LWDB or Attorney Barbee

The Bullers' attempted FDCPA claims against LWDB and attorney Barbee rest on yet another faulty premise: that communications from Chase impact the applicability of the FDCPA to LWDB and attorney Barbee's conduct in the non-judicial foreclosure. They do not.

The Bullers specifically urge (more than once) that the communications from Chase *and* LWDB and attorney Barbee were part of a "broader set of notices that gave conflicting and misleading information regarding the amount allegedly due and the steps required to

avoid foreclosure." [Resp. at 8; *see also id.* (asserting the June 18, 2025, foreclosure packet from LWDB and attorney Barbee "occurred in connection with the same mortgage debt and foreclosure-related communications that form the basis of Bullers' FDCPA claims"); *see also id.* at 9 ("Plaintiffs allege these figures, viewed together with earlier statements and notices, were inconsistent and did not clearly explain the amount required to cure or reinstate the loan").]

Even if LWDB and attorney Barbee were "debt collectors" engaged in attempts to collect a debt (which they are not), only those communications LWDB and attorney Barbee sent the Bullers may be scrutinized when determining whether the FDCPA has been violated, not the communications of any party who is *not* a "debt collector." *Carrington Mortgage Services*, 3 F.4th at 1113 ("we must look at each communication individually to determine whether it was made in connection with the collection of a debt for purposes of the FDCPA"). The Bullers' attempt to hold LWDB and Barbee liable for communications they did not send is in direct contradiction with the plain language of the FDCPA and the holding in *Carrington Mortgage Services*.

The Bullers have failed to point out facts that distinguish their claims from the claims in *Obduskey* and *Carrington Mortgage Services*. For all the foregoing reasons, this Court should grant LWDB's and Barbee's motion to dismiss, with prejudice.

## IV.    The Bullers' Claims for Declaratory and Injunctive Relief Should Not Survive Dismissal

The Bullers admit that declaratory and injunctive relief are remedies, not claims. [Resp. at 30.] The Bullers further concede that the claims on which their declaratory and

11

injunctive relief are "tethered to substantive claims that unquestionably remain in the case, including the RESPA/Regulation X claim, the Minnesota loss-mitigation and dual-tracking claim, the TILA/Regulation Z claim, the reinstatement claim, and the contract-based claim." [*Id.* at 32.]

The problem: none of the allegedly substantive causes of action that give rise to the Bullers' claim for declaratory and injunctive relief are pleaded against LWDB or Barbee. [*See* FAC ¶¶ 60-74, 75-87, 88-101, 151-64, 165-78.] The Bullers' admission that none of the substantive causes of action giving rise to their claim for declaratory or injunctive relief are pleaded against LWDB and Barbee alone warrants dismissal with prejudice.

A further problem: the Bullers have not identified any controversy that is ripe for adjudication by this Court. Instead, they are asking this Court to issue an advisory opinion.

Declaratory and injunctive relief are remedies that consider *ripe* controversies. *See, e.g.*, *Pub. Water Supply Dist. No. 8 of Clay Cnty., Mo. v. City of Kearney, Mo.*, 401 F.3d 930, 932 (8th Cir. 2005) (Article III of the U.S. Constitution prohibits courts from issuing advisory opinions based on a hypothetical state of facts and the "ripeness doctrine applies to declaratory judgment actions" and prevents courts from deciding cases where an injury is not "certainly impending.")

The Bullers alleged that future foreclosure actions remain possible. to state a ripe controversy. [Resp. p. 31.] But *possible* foreclosure activity does not constitute a ripe controversy. *Kerwin v. Bank of Am., N.A.*, No. CIV. 13-3312 DSD/SER, 2014 WL 3101323, at *4 (D. Minn. July 8, 2014). Therefore, issues of redemption and possession are not ripe before this Court to allow the Court to enjoin or declare the Bullers' rights.

Dismissal with prejudice of the Bullers' declaratory and injunctive relief claims against LWDB and Barbee is appropriate.

## V.    The Bullers' Other Miscellaneous Claims Fail as a Matter of Law

### A.    The Attempted RESPA Claim Fails

The RESPA claim (Count I) is not a claim against LWDB or attorney Barbee. Instead, the Bullers allege that the mortgage servicer failed to properly respond to their loss mitigation requests. But RESPA and its implementing regulations cited apply to mortgage servicers. [*see* FAC at 16; 12 U.S.C. § 2605 (servicing mortgage loans and escrow accounts), 12 C.F.R. § 1024.17 (escrow accounts), § 1024.38 (general servicing), § 1024.40 (servicer requirements regarding continuity of contact), and § 1024.41 (loss mitigation).

The RESPA statute and the regulations cited by the Bullers do not apply to attorneys for mortgage servicers and the Bullers have not alleged otherwise.

### B.    The Statutory Loss-Mitigation and Dual-Tracking Claims Fail

Similarly, the Bullers have not pleaded and cannot plead a cause of action against LWDB and Barbee under the Minnesota loss-mitigation and dual-tracking statute (Minn. Stat. § 582.043) or the reinstatement statute (Minn. Stat. § 580.30). The Bullers concede that these two claims are not claims against LWDB or attorney Barbee. [Resp. at 31.]

The Bullers do not (and cannot) allege LWDB and attorney Barbee were the servicer of their loan and therefore they were not subject to the loss-mitigation and dual-tracking requirements of Minn Stat. § 582.043. The provisions of Minn. Stat. § 582.043 apply only to "servicers."

13

Therefore, no claim for violation of Minn. Stat. §§ 580.30 or 582.043 can be applied to LWDB or Barbee as a matter of law.

### C.    The TILA Claim Fails

The Bullers' cannot state a TILA claim cannot against LWDB or attorney Barbee. Under 15 U.S.C. § 1640(a), "any creditor who fails to comply with any requirement imposed under this part . . ." may be held liable for various damages. Neither LWDB nor Barbee are "creditors:"

> The term "creditor" refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement.

15 U.S.C. § 1602(g).

### D.    The Breach of Contract Claim Fails

Finally, the Bullers do not mention LWDB or Barbee in their breach of contract claim. Neither LWDB nor Barbee are parties to the loan contract between the Bullers and their lender, and the Bullers do not allege they are.

To state a claim for breach of contract in Minnesota "a plaintiff must show that (1) a contract was formed; (2) the plaintiff performed any conditions precedent; and (3) the defendant breached the contract." *E. Coast Test Prep LLC v. Allnurses.com, Inc.*, 307 F. Supp. 3d 952, 970 (D. Minn. 2018), *aff'd*, 971 F.3d 747 (8th Cir. 2020).

14

The Bullers have failed to allege (let alone plausibly allege) any of the elements of a cause of action for a contract to which LWDB and Barbee were parties. Therefore, the Bullers' Eighth Cause of Action cannot give rise to declaratory or injunctive relief against LWDB or Barbee.

### E.    The MCFA Claim Fails

The Bullers attempt to salvage their meritless MCFA claim by alleging that the sale of merchandise includes "not only goods, but also **"intangibles, real estate, loans, or services."** [Resp. p. 34.]

The Bullers contend that their mortgage loan is expressly included within the statutory definition of "merchandise," including related services, and therefore the Bullers state a claim under the MCFA. *Id.* The Bullers do not, however, allege that LWDB or Barbee acted unlawfully "in connection with the sale" of the loan or any services. That failure is fatal to any claim against LWDB or Barbee under the MCFA. *See* Minn. Stat. § 325F.69 subd. 1.

"'Sale' means any sale, offer for sale, or attempt to sell any merchandise for any consideration." Minn. Stat. § 325F.68 subd. 4. The Bullers admit that their mortgage loan "originated on **October 31, 2005** and was later modified in **2019**." [Resp. p. 7.] The Bullers have not alleged and cannot allege that LWDB or Barbee originated or serviced the loan. *Id.*

Even if the Bullers were somehow correct that the loan origination and/or the services provided in connection with that loan are sufficient to evidence a sale of merchandise under the MCFA, neither LWDB nor attorney Barbee, by the Bullers' own

allegations, sold, offered for sale, or attempted to sell the loan or any accompanying services. For that reason alone, the Bullers have failed to allege a cognizable claim against LWDB and attorney Barbee under the MCFA.

Moreover, there is no causal nexus between the origination of the loan (more than 20 years ago, or six years ago for the loan modification in 2019) and the alleged actions of LWDB and attorney Barbee in 2025.

None of the alleged representations by LWDB and Barbee relate to the time the "merchandise" was "sold" which is sufficient to support dismissal of the Bullers' MCFA claim. *Grady v. Progressive Direct Ins. Co.*, 643 F. Supp. 3d 929, 936 (D. Minn. 2022) (dismissing a CFA claim where the complaint failed to plead facts showing that the alleged misrepresentations occurred at the time of the sale of merchandise); *see also Moua v. Jani-King of Minnesota, Inc.*, 613 F. Supp. 2d 1103, 1113 (D. Minn. 2009) (granting partial judgment on the pleadings where the alleged misrepresentation did not relate to the nature or quality of the merchandise sold).

The Bullers' allegations are akin to those dismissed in *Thinesen v. JBC Legal Grp., P.C.*, No. 05-cv-518-DWF-SRN, 2005 WL 2346991, at *5 (D. Minn. Sept. 26, 2005) (finding that a plaintiff's purchase of pizza six years before the debt collector's attempt to collect a dishonored check did not state a nexus between the sale of goods and the conduct alleged to violate the CFA). LWDB and Barbee explained these failures in their opening memorandum. [*See* Dkt. No. 21 at 23-24.] The Bullers did not rebut or even attempt to explain how LWDB or Barbee's actions constituted a sale or an offer to sell the loan or any services.

Finally, the Bullers misread Minn. Stat. §§ 325F.68 to 325F.70 when they argue that the text of the statute expressly authorizes the cause of action. [Resp. p. 36.] Minnesota Stat. § 325F.70 provides that, in connection with a sale of merchandise for personal, family, household, or agricultural purposes, a party *may* bring an action under the MCFA and *may* recover damages including attorneys' fees and other equitable relief. *Id.*

The fact that the Bullers *may* bring a cause of action under the MCFA does not, however, equate to the Bullers being entitled to proceed on their action under the MCFA. Because the misrepresentations alleged by the Bullers do not reflect any nexus between the goods or services provided to the Bullers 20 years ago and the alleged misrepresentations by LWDB and Barbee, the Bullers' argument is without merit.

For all the foregoing reasons, this Court should dismiss the Bullers' MCFA claim, with prejudice.

## VI.   Any Attempted Amendment Would Be Futile and Dismissal With Prejudice Remains Warranted

The Bullers request that, if this Court dismisses any of its claims against LWDB and attorney Barbee, that they be allowed to file a second amended complaint. [Resp. pp. 37-41.] However, because amendment of the Bullers' FAC as to LWDB and attorney Barbee would be futile that request should be denied.

"An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Cheeks v. Belmar*, 162 F.4th 899, 907 (8th Cir. 2025). That is the case here.

17

First, the Bullers cannot plead around *Obduskey* sufficiently to render subsequent claims under the FDCPA viable under the 12(b)(6) standard. The Bullers claim they could amend their complaint to "clarify" "why LWDB and Barbee allegedly acted beyond the narrow scope of persons engaged in only nonjudicial foreclosure proceedings." Resp. p. 39 at a. But the Bullers had a chance to explain what they would have done differently in their Response, and they failed to allege any facts to support a plausible claim.

Similarly, the Bullers have admitted that the claims on which their declaratory and injunctive relief requests are based do not apply to LWDB and Barbee. The Bullers' free-floating injunctive and declaratory relief claim therefore could not be "restyled" to apply to LWDB and Barbee.

Finally, LWDB and Barbee have stated all the reasons the Bullers' MCFA claim fails. The "sale" of a loan 20 years ago could not have a causal nexus to any of the alleged misrepresentations made by LWDB and Barbee (which misrepresentations LWDB and Barbee deny). The Bullers expressly state that their amendment would connect their "loan" or "services" to LWDB and Barbee, but that does not cover the Bullers' inability to connect the "loan" or "services" with the sale or offer to sell any merchandise by LWDB and Barbee or the fact that the "loan" or "services" are too remote in time to apply to the purported misrepresentations the Bullers claim give rise to their MCFA claim. Put simply, the Bullers' attempts at repleading that claim could not pass the futility test.

Finally, While the Bullers argue that amendment of their claims would not be futile, they did not file a motion to amend or explain how they would amend their claims to avoid dismissal.

18

Where a plaintiff fails to move to amend pursuant to D. Minn. L.R. 15(b) *or* identify any additional facts to avoid dismissal, the court may dismiss with prejudice and deny the informal request for leave to amend. *Steamfitters Loc. 449 Pension & Ret. Sec. Funds v. Sleep No. Corp.*, No. 21-CV-2669 (PJS/DTS), 2023 WL 4421688, at *11 (D. Minn. July 10, 2023) (citing *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 505 (8th Cir. 2009) ("A district court does not abuse its discretion in denying leave to amend where a plaintiff has not followed applicable procedural rules."); *Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 914 (8th Cir. 2002) ("Meehan failed to specify the proposed new allegations, and the district court was not required to engage in a guessing game.").

For all these reasons, no amended complaint could not survive another motion to dismiss and thus would be futile.

### Conclusion

Accordingly, this Court should dismiss the Bullers' claims against LWDB and Barbee, with prejudice, and should award such other and further relief this Court deems just and appropriate.

19

**BASSFORD REMELE**
*A Professional Association*

Dated: May 20, 2026

By: */s/ Patrick D. Newman*
Patrick D. Newman (MN #395864)
100 South Fifth Street, Suite 1500
Minneapolis, MN  55402
Telephone: (612) 333-3000
Facsimile: (612) 333-8829
Email: pnewman@bassford.com

*Attorneys for Defendants Liebo, Weingarden, Dobie & Barbee, P.L.L.P. and Craig M. Barbee*

20